# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

RAMON PANIAGUA                          **CRIMINAL NO. 02-60033**
                                        **CIVIL ACTION NO. 07-1418**

VS.                                     **JUDGE DOHERTY**

UNITED STATES OF AMERICA                **MAGISTRATE JUDGE METHVIN**

## REPORT AND RECOMMENDATION ON
## MOTION TO VACATE OR MODIFY
## SENTENCE PURSUANT TO §2255
### *(Rec. Doc. 262)*

On August 27, 2007, Ramon Paniagua, filed a Motion to Modify Sentence Pursuant to

28 U.S.C. § 2255.  The United States filed an answer and memorandum.[1]  Paniagua filed a

reply.[2]  For the following reasons, it is recommended that Paniagua's motion be **DENIED AND**

**DISMISSED WITH PREJUDICE.**

*Background*

On May 14, 2003, Paniagua was charged in the following three counts of a five-count

indictment:

1.      Count One: Conspiracy to possess with intent to distribute over 5 kilograms of
        cocaine hydrochloride in violation of 21 U.S.C. §§ 846, 841(a)(1).

2.      Count Two: Possession with intent to distribute more than 5 kilograms of
        cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A).

---

[1] Rec. Doc. 266.

[2] Rec. Doc. 267.

3.      Count Four: Possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[3]

On January 19, 2005, Paniagua pleaded guilty to Counts One, Two, and Four.[4]  On August 12, 2005, Paniagua was sentenced to 168 months in prison on Counts One and Two and 60 months on Count Four, with the sentence on Count Four to run consecutively.[5]  Throughout the proceedings, Paniagua was represented by retained counsel, Daniel Stanford.  On August 24, 2005, Mr. Stanford withdrew as counsel.[6]  On September 18, 2006, the Fifth Circuit dismissed Paniagua's appeal as frivolous.[7]

### Issues Presented

In support of his § 2255 motion, Paniagua raises the following claims:

1.  Ineffective assistance of counsel during plea negotiations rendering his plea involuntary;

2.  Ineffective assistance of counsel at sentencing for failing to argue that sentencing enhancements had to be proven beyond a reasonable doubt under U.S. v. Booker;

3.  Ineffective assistance of counsel at sentencing for failing to argue that the sentence was unreasonable and was greater than necessary to achieve the goals of sentencing under U.S. v. Booker.

### Scope of §2255 Review

The scope of relief afforded under § 2255 is extremely narrow.  It is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been

---

[3] Rec. Doc. 63.

[4] Rec. Doc. 169-170.

[5] Rec. Doc. 228, 229.

[6] Rec. Doc. 237.

[7] Rec. Doc. 256.

raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir.1992); United States v. Acklen, 47 F.3d 739, 741 (5th Cir.1995). "We apply this rigorous standard in order to ensure that final judgments command respect and that their binding effect does not last only until "the next in a series of endless post-conviction collateral attacks." United States v. Shaid, 937 F.2d 228, 231-232 (5th Cir.1991), *cert. denied*, 112 S.Ct. 978 (1992).

Section 2255 provides four grounds for relief: 1) that the sentence violates the Constitution or other federal law; 2) that the court lacked jurisdiction; 3) that the sentence exceeded the maximum allowed by law; or 4) that the sentence is otherwise "subject to collateral attack." Title 28 U.S.C. §2255.

The issues presented in the instant case may be resolved by considering the briefs filed by the parties and the court record. No evidentiary hearing is required in a §2255 petition where the record is clearly adequate to dispose of the allegations, or where the claims made by the petitioner are either contrary to law. U. S. v. Green, 882 F.2d 999, 1008 (5th Cir.1989); U.S. v. Smith, 915 F.2d 959, 964 (5th Cir. 1990). An evidentiary hearing is also unnecessary "when the petitioner's allegations are 'inconsistent with his conduct' and when he does not offer 'detailed and specific facts' surrounding his allegations." U.S. v. Smith, supra. Further, "conclusory allegations of ineffective assistance fail to surmount he formidable barrier presented by a petitioner's own open court assertions and thus do not require an evidentiary hearing." U.S. v. Halverson, 985 F.2d 556 (5th Cir. 1993), *citing* Harmason v. Smith, 888 F.2d 1527, 1531 (5th Cir.1989). Although Paniagua requests a hearing, the undersigned concludes that the record is clearly adequate to dispose of his allegations.

### *Legal Analysis*

To prevail on an ineffective assistance of counsel claim, a petitioner must establish two things: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. The court's scrutiny shall be "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689-90. See also Marler v. Blackburn, 777 F.2d 1007, 1010 (5th Cir. 1985).

The Strickland court further outlined the extent of prejudice that must be established by the defendant:

> * * * An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-65 (1981).

Strickland, supra, at pages 691, 694-95; see also Taylor v. Maggio, 727 F.2d 241 (5th Cir. 1984); U.S. v. Diaz, 733 F. 2d 371 (5th Cir. 1984). A habeas court must be careful not to second-guess legitimate strategic choices made by defense counsel which under the light of hindsight seem ill-advised and unreasonable. Sawyer v. Butler, 848 F. 2d 582, 587-88 (5th Cir. 1988).

In establishing prejudice, "any amount of actual jail time has Sixth Amendment significance." Glover v. US, 531 U.S. 198, 203, 121 U.S. 696 (2001); US v. Grammas, 376 F.3d 433 (5th Cir. 2004). Accordingly, Paniagua must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra, 104 S.Ct. at 2068.

Because both Strickland factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." Strickland, 466 U.S. at 689-94. Petitioner must satisfy both prongs of Strickland.

## Claim 1: Ineffective assistance regarding guilty plea

As discussed above, Paniagua pled guilty. Paniagua argues that his guilty plea was not voluntary because he pled guilty "based entirely" on erroneous information from counsel that he would receive a sentence between 96 and 120 months imprisonment.

A voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant. United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), citing United States v. Smallwood, 920 F.2d 1231, 1240 (5th Cir.1991). This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. Id. The standard for determining the effectiveness of counsel during a guilty plea proceeding is the two-prong test set forth by the Supreme Court in Strickland. Deville v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994), citing Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). To meet the prejudice prong, the defendants must affirmatively prove, and not merely allege, prejudice. Bonvillain v. Blackburn, 780 F.2d 1248, 1253 (5th Cir.), cert. denied, 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986).

Thus, "[e]ven where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary. In such a case

there is 'no actual and substantial disadvantage' to the defense." United States v. Diaz, 733 F.2d 371, 376 (5th Cir. 1984), quoting Diaz v. Martin, 718 F.2d 1372, 1379 (5th Cir.1983). Moreover, reliance on erroneous advice of counsel regarding the sentence to be imposed does not render a guilty plea involuntary or unknowing. U.S. v. Gracia, 983 F.2d 625, 629 (5th Cir. 1993); U.S. v. Santa Lucia, 991 F.2d. 179, 180 (5th Cir. 1993).

In Gracia, the petitioner argued that his guilty plea was not voluntary because his reason for pleading was an erroneous sentence prediction of counsel and because Gracia's "yes" and "no" answers to the judge's questions during the plea hearing resulted from prompting by his attorney, rather than from his own free will. U.S. v. Gracia, 983 F.3d at 628 n. 10. The Fifth Circuit found that the record showed the voluntariness of the plea:

> By accepting the guilty plea, the district court implicitly found that Gracia answered its questions during rearraignment of his own volition...We are not wont to disturb this implicit finding, based as it is on the district court's superior ability to observe the conduct of both Gracia and his counsel during the plea colloquy.
>
> ***
>
> Gracia next contends that his reliance upon misinformation from both prosecution and defense counsel about the likely period of incarceration rendered his guilty plea involuntary. He claims that both the prosecutor and defense counsel told him that if he pleaded guilty he would be sentenced to 120 months. This is not a sufficient basis to set aside a guilty plea where, as here, the trial court properly advised the defendant about the possible maximum penalty. *See* United States v. Kinder, 946 F.2d 362 (5th Cir.1991) (alleged misrepresentation by prosecutor did not vitiate guilty plea), cert. denied, 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992); United States v. Jones, 905 F.2d 867, 868 (5th Cir.1990) ("erroneous advice of defense counsel as to the guideline sentence does not constitute a violation of Rule 11").

Id. at 628-629.

Paniagua argues that the only reason he pled guilty was because his attorney advised that he would receive a sentence of 96 to 120 months. Paniagua also argues that his answers during the plea colloquy do not reflect his true intentions because they were made based on the signals given by counsel.[8]

A review of the record shows that on January 19, 2005, Paniagua signed a Plea Agreement stating that he understood that the statutory penalty for Counts One and Two was a mandatory minimum of 10 years and up to life imprisonment and Count Four carried a mandatory imprisonment of five years imprisonment.[9] Paniagua also signed an "Affidavit of Understanding of Maximum Penalty and Constitutional Rights" where in he again acknowledged that he he there was a minimum sentence of 10 years and maximum of life imprisonment for Counts One and Two and five years for Count Four.[10] Paniagua acknowledged that his "plea in this matter is free and voluntary, and that it has been made without threats or inducements from anyone associated with the State or United States Government, and that the only reason I am pleading guilty is that I am in fact guilty as charged. The Court has given me the opportunity to make any statement desired."[11]

Additionally, Judge Doherty advised Paniagua of the maximum penalties at the plea hearing:

> THE COURT: All right. Do you know the maximum sentence and fine that I might impose on the charges to which you are pleading guilty?

---

[8] Rec. Doc. 262-2 at p. 5 and Rec. Doc. 262-3.

[9] Tr. 170 ¶ 3(A).

[10] Rec. Doc. 170-2.

[11] Rec. Doc. 170-2 at p. 2.

THE WITNESS:      Yes.

THE COURT:        Okay.  I'm going to walk you through it under the statute.  The maximum possible penalty under the statutes involved for Counts 1 and 2 of the superseding indictment, pursuant to Title 21, United States Code, Section 841 (a) (1), is a minimum mandatory term of confinement of ten years up to a maximum of life imprisonment, a fine of up to $4 million, and a term of supervised release of not more than five years, following the confinement, and a $100 special assessment fee for the Crime Victim Fund.

Now the maximum possible penalty under the statute for Count 4 of the superseding indictment, pursuant to Title 18, United States Code, Section 924 (c)(1) is a term of confinement of five years – and Gladys [the interpreter], it's important he understands it's consecutive to any other sentence imposed, a fine of up to $250,000, and a term of supervised release of not more than three years following confinement, and a $100 special assessment fee for the Crime Victim Fund.[12]

\*\*\*

THE COURT:        Okay.  Has anyone threatened you or forced you to plead guilty today?

THE DEFENDANT: No.

Counsel for the government then detailed the plea agreement, i.e., that in exchange for the guilty plea and Paniagua's cooperation, the government would not oppose any motion by Paniagua, at sentencing, that he be sentenced at the bottom of the guideline range.  The agreement also provided that if Paniagua provided substantial assistance to the government, the government would file a motion for departure.  The Court then turned to the defense:

THE COURT:        Mr. Stanford, do you agree, that's substantially the agreement?

MR. STANFORD:    Yes, Your Honor. In addition to that, I met with Mr. Paniagua yesterday to fully explain, as best I could, the recent Supreme

---

[12] Transcript of Plea Hearing p. 18-19.

Court case in <u>Booker</u> and how that may have an impact on his case, and that now the Sentencing Guidelines are advisory, the Court may choose to follow the guidelines or the Court may also choose to depart downwardly or upwardly and that the guidelines are merely advisory at this point.

***

THE COURT:    Mr. Paniagua, is that how you understand your deal with the government to be?

THE DEFENDANT: Yes.

THE COURT:    Mr. Stanford, I'm assuming you explained to him what the concept "mandatory" means?

MR. STANFORD:    Yes, ma'am.

THE COURT:    And the concept "consecutive"?

MR. STANFORD:    Yes, ma'am.

THE COURT:    Mr. Paniagua, he explained to you what "mandatory" means and what "consecutive" means?

THE DEFENDANT: Yes.

THE COURT:    "Mandatory" you understand means I must, and "consecutive" it has to run one right after the other. You understand that?

THE DEFENDANT: Yes.[13]

The Court also asked Paniagua whether anyone had made any promises to him that caused him to plead guilty, to which he responded, "No."[14]  The Court explained that any recommendation of a sentence by his attorney or counsel for the government was not binding on

---

[13] <u>Id</u>. at pps. 26-27.

[14] <u>Id</u>. at p. 28.

the Court and that he might on the basis of his "guilty plea receive a more severe sentence than

requested or recommended."[15]   The Court inquired about any predictions made by counsel:

> THE COURT:          Has anyone made any prediction or told you what they say your
>                     sentence actually will be?
>
>                     Let the record reflect he's conferring with counsel by way of the
>                     interpreter, again.
>
> (Conferring with counsel)
>
> MR. STANFORD:       Mr. Paniagua was suggesting, Your Honor, I did go over, do a
>                     guideline run on his – based on the amount of drugs and the
>                     firearms, and based on what I – the guidelines showed, I told him
>                     that that was my best guess as to what his sentence may end up
>                     being, but it was only a best guess based on my guideline review.
>
> THE COURT:          And you also factored in, I'm assuming, the mandatory minimums
>                     and the consecutive aspect of certain aspects of the counts?
>
> MR. STANFORD:       Yes, ma'am.
>
> THE COURT:          Is that correct, Mr. Paniagua?
>
> THE DEFENDANT: Yes.[16]

This clear and unequivocal testimony establishes that Paniagua's plea was knowing and

voluntary.  Paniagua's present allegations are self-serving and unsubstantiated, and are

insufficient to contradict his plea agreement and the statements he made under oath in open

court.  Sworn statements in open court during a plea hearing "carry a strong presumption of

verity."  United States v. Martinez-Molina, 64 F.3d 719, 733 (5th Cir. 1995), citing Blackledge

v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).  Allen v. United

---

[15] Id.

[16] Id. at p. 29.

States, 634 F.2d 316, 317 (5ᵗʰ Cir. 1981). "[T]he representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Further, documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight." U.S. v. Abreo, 30 F.3d 29 (5ᵗʰ Cir. 1994).

Paniagua clearly testified that he understood that he was facing between ten years and life in prison. The Court accepted Paniagua's representation that he understood the sentence range, that only the judge could determine the ultimate sentence, and that no promises or inducements were given in order to coerce Paniagua's guilty plea. Thus, the Court was satisfied that Paniagua's guilty plea was knowingly and voluntarily given.

Further, despite Paniagua's claim that his attorney did not inform him until after sentencing that "he had merely guessed when telling him that he would receive a sentence between 96 and 120 months imprisonment" the record clearly shows that during the plea hearing counsel stated that he provided Paniagua with a guess as to what the sentencing range would be.[17] There was no dispute that counsel had told Paniagua a possible sentencing range, however, the colloquy was clear that the Court was not bound by any such representation by counsel.

Moreover, Paniagua's argument that his answers to the Court's inquiries during the plea hearing were not his own because he answered according to signals given by counsel is unpersuasive. Just as in Gracia, supra, the Court observed the conduct of both Paniagua and his counsel during the plea colloquy and evidently concluded that Paniagua's answers were his

---

[17] Rec. Doc. 262-2 at p. 5.

own.  Based on the Court's observations and acceptance of Paniagua's testimony, his self-serving allegations made in his § 2255 do not overcome the Court's implicit finding that Paniagua answered of his own volition.

The record shows that Paniagua knew the minimum and maximum penalties.  Thus, even if counsel provided erroneous advice regarding the sentence to be imposed, the fact that the Court advised Paniagua of the possible sentence at the plea hearing and he understood those penalties, his guilty plea was voluntary and his ineffective assistance of counsel claim regarding his plea is without merit.  U.S. v. Gracia, 983 F.2d at 629; U.S. v. Santa Lucia, 991 F.2d. at 180.

**Claim 2:  Ineffective assistance of counsel at sentencing regarding enhancements**

Paniagua argues that counsel was ineffective for failing to argue that under U.S. v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), enhancements to sentencing had to be admitted or proven beyond a reasonable doubt.  Specifically, Paniagua argues that the sentencing judge improperly considered drugs that he did not admit to possessing, and that he was a leader/organizer.

In Booker, the Supreme Court extended to the Federal Sentencing Guidelines the rule that any fact, other than the fact of a prior conviction, "which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, supra *citing* Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

In United States v. Mares, 402 F.3d 511, 519 (5th Cir.), cert. den'd, 546 U.S. 828, 126 S.Ct. 43, 163 L.Ed.2d 76 (2005), the court held that a judge "is entitled to find by a

preponderance of the evidence all the facts relevant to the determination of a Guideline

sentencing range and all facts relevant to the determination of a non-Guidelines sentence."  In

determining the offense level of a defendant convicted of a drug conspiracy, the Court may

consider the drug quantities attributed to a defendant as part of his "relevant conduct" related to

and in furtherance of the charged drug conspiracy.  U.S.S.G. § 1B1.3; <u>United States v. Solis</u>,

299 F.3d 420, 462 (5th Cir. 2002); <u>United States v. Puig-Infante</u>, 19 F.3d 929, 942 (5th Cir.

1994).

Paniagua argues that he only admitted to possessing 13 kilograms, and that he did not

admit to being a leader or organizer.  The record shows that Paniagua admitted during the plea

hearing that he conspired to distribute cocaine, that he was aware that he could be sentenced for

possession with intent to distribute 20 kilograms of cocaine, and that he directed others in the

illegal activity:

> THE COURT:	Between January 1, 1989, and March 17, 2003 did you conspire with other individuals to transport and distribute cocaine?
>
> THE DEFENDANT:	Yes.
>
> THE COURT:	Did you direct or instruct Betzaida –
>
> ***
>
> THE COURT:	Betzaida Buitrago to send Western Union money wires to other people?
>
> Okay.  Turn off your mike.  Let the record reflect he's conferring with counsel by way of the interpreter.
>
> (Conferring with counsel)
>
> THE DEFENDANT:  Yes.

THE COURT:               Were those Western Union money wires to be used to facilitate the selling of the drugs in the drug trafficking conspiracy? Again, let the record reflect counsel is conferring with his client by way of the interpreter.

(Conferring with counsel)

THE DEFENDANT:  Yes.

THE COURT:               Now the amount of cocaine involved in this conspiracy to sell or distribute drugs, was this to your knowledge over five kilograms? Okay. Again, let the record reflect they are again conferring, counsel and Mr. Paniagua, by way of the interpreter.

(Conferring with counsel)

THE DEFENDANT:  Yes.[18]

***

THE COURT:               At this time the government admits that it is aware of approximately 20 kilograms of cocaine that you distributed and possessed with the intent to distribute. Do you understand that it is possible or probable with that admission that those 20 kilograms of cocaine might be used to calculate your sentencing guideline range?

THE DEFENDANT:  Yes.[19]

THE COURT:               Is your client willing to admit to a certain amount of cocaine that he agrees that he in fact did possess with intent to distribute, and if so, what is that amount?

MR. STANFORD:     Judge, we agree with the government's amount of 20 kilograms.

THE COURT:               Only?

MR. STANFORD:     Yes, ma'am.

---

[18] Transcript of Plea Hearing pps. 12-13.

[19] Id. at pps. 32-33.

THE COURT:    And your client, Mr. Stanford, is willing to admit at this time to the 20 kilograms as being the amount that he possessed with the intent to distribute?

MR. STANFORD:    Yes, ma'am.

THE COURT:    And as to the amount of the conspiracy as well?

MR. STANFORD:    Yes, ma'am.

***

THE COURT:    And he is willing to admit to that 20 kilograms as to the conspiracy count as well as the straight up possession with intent to distribute count?

MR. STANFORD:    The straight up possession with intent, I believe, involved 13 kilograms.

MR. GRAYSON:    That's correct, Your Honor.

MR. STANFORD:    Which my understanding is encompassed in the entire 20 kilograms which is the conspiracy.

THE COURT:    Okay. So he's willing to admit on the straight up count of possession with intent to distribute the 13 kilograms, correct?

MR. STANFORD:    Yes, ma'am.

THE COURT:    As to the overall conspiracy with intent -- conspiracy to possess with intent to distribute cocaine, the total of 20 kilograms, he is agreeing to admit to that, correct?

MR. STANFORD:    Yes, ma'am.

THE COURT:    But the 13 is contained within the 20?

MR. STANFORD:    Correct, Your Honor.

THE COURT:    So we're not talking about 33, we're talking about a total of 20?

MR. STANFORD: Correct, Your Honor.[20]

Prior to sentencing, the Probation Office prepared a Pre-sentence Investigation Report which stated:

14. During the plea hearing, the defendant and the government stipulated to the fact that the defendant was involved in the distribution of at least (20) kilograms of cocaine hydrochloride. The defendant also admitted to directing Betzida Buitrago to send money orders to facilitate trafficking of cocaine.

The PSI calculated the base level offense as:

19. *** According to the offense conduct, the defendant is held accountable for twenty (20) kilograms of cocaine hydrochloride. According to USSG §2D1.1(c)(3), at least fifteen (15) kilograms but less than fifty (50) kilograms of cocaine hydrochloride establishes a base offense level of thirty-four (34).

The base level was adjusted for Paniagua's role in the offense:

22. ***According to USSG §3B1.1(c), if the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by two (2) levels.

Defendant filed an objection to the PSI, arguing that he did not admit to directing another person to facilitate trafficking of cocaine.[21] At the sentencing hearing, the PSI was addressed and the objection was withdrawn:

THE COURT: All right. Have the defendant, defense counsel, and the government received and reviewed a copy of the presentence investigation report?

MR. STANFORD: Yes, ma'am.

MR. GRAYSON: The government has.

---

[20] Id. at pps. 33-35.

[21] Although Paniagua claims that he did not receive a copy of the PSI until after the sentencing hearing, this is clearly refuted by his attorney's statements to the Court. Moreover, even assuming that Paniagua did not receive the report, he fails to show how he was prejudiced. As established herein, there was no error in the sentencing proceedings.

\*\*\*

MR. STANFORD:    Yes, but I'd like to clarify for the Court that I'm going to withdraw that objection because Mr. Paniagua did admit to instructing Ms. Buitrago to mail the money orders to Houston to Mr. Bautista.

THE COURT:    Yes, he most absolutely did. I have a copy of his guilty plea with me today, which is why I found it interesting that he and his counsel would suggest that he did not.[22]

The record clearly establishes that Paniagua testified that he was aware that he could be sentenced for the entire 20 kilograms of cocaine attributable to the conspiracy endeavor, that counsel stipulated that Paniagua admitted to being responsible for the 20 kilograms of drugs, and that Paniagua admitted to directing Ms. Buitrago to forward wires to Houston and that the purpose of the wire transfer was for drug trafficking activity. Thus, the sentencing judge properly considered these facts in setting the sentence.

In light of the above, an objection by counsel to the court's consideration of the evidence would have been meritless. Counsel need not make a frivolous objections or a futile motion. *See* U.S. v. Preston, 209 F.3d 783, 785 (5th Cir. 2000) *citing* Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998)("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness...."); Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) citing Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Paniagua has not satisfied the first Strickland requirement. Thus,relief is not warranted with respect to this claim.

---

[22] Transcript of Sentencing Hearing at p. 4.

**Claim 3: Ineffective assistance of counsel regarding emphasis on Guidelines**

Paniagua claims that counsel was ineffective for failing to object to the emphasis placed

upon the Guidelines in sentencing:

> Had the Court truly considered the Petitioner's history and characteristics, it
> would have found that there was a basis for a non-guideline sentence based upon
> the Petitioner's age and the fact that he would later face deportation proceedings.
> Such things are properly considered at sentencing. The Petitioner was 43 years
> old at the time of sentencing. Therefore, even after serving a ten-year sentence,
> he would have been approximately 53 years old by the time he was released from
> confinement – much older and much less likely to commit another crime in the
> future.
>
> ***
>
> Additionally, the Guideline sentence range of imprisonment did not factor the
> Petitioner's status as a deportable alien. That status effectively enhanced any
> sentence of imprisonment even further, by resulting in a sentence even greater
> than the term of imprisonment.[23]

In Booker, the Court found that the Guidelines were not mandatory, but that they must

be taken into account together with other sentencing goals enumerated in 18 U.S.C. § 3553.

Booker, supra. In determining a sentence, the court must first calculate the applicable

Guidelines range. Gall v. U.S., 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). A sentencing court may

thereafter vary from the Guidelines. Kimbrough v. U.S., 128 S.Ct. 558, 169 L.Ed.2d 481

(2007).

The Fifth Circuit recently explained the effect of a sentence within a properly calculated

Guidelines range, such as in this case:

> When the district court imposes a sentence within a properly calculated
> guidelines range and gives proper weight to the Guidelines and the 18 U.S.C.
> §3553(a) factors, we "will give great deference to that sentence" and "will infer

---

[23] Rec. Doc. 262-2 at pps. 28-29.

that the judge has considered all the factors for a fair sentence set forth in the Guidelines" in light of the sentencing considerations set out in § 3553(a). <u>United States v. Mares</u>, 402 F.3d 511, 519-20 (5th Cir. 2005). A discretionary sentence imposed within a properly calculated guidelines range is presumptively reasonable. <u>United States v. Alonzo</u>, 435 F.3d 551, 554 (5th Cir. 2006); see also <u>Rita v. United States</u>, --- U.S. ----, 127 S.Ct. 2456, 2466-68, 168 L.Ed.2d 203 (2007) (holding that an appellate court may apply a presumption of reasonableness to a within-guidelines sentence).

<u>U.S. v. Campos-Maldonado</u>, ____ F.3d ____, 2008 WL 2357364 (June 11, 2008).

Here, the record shows that the judge did not rely on the Guidelines as mandatory and that she had considered the applicable sentencing factors.

At the plea hearing:

THE COURT:     Now, under the Sentencing Reform Act of 1984, the United States Sentencing commission has issued guidelines for judges to consider in determining a criminal case. However, more recently, the United States Supreme Court modified the Sentencing Reform Act as noted in <u>U.S. v. Booker</u> to again make it such that the Court should and must consider these guidelines, but they are no longer mandatory. They are advisory in nature. Additionally, within the guidelines at 3553, I believe it is, there are certain factors that this Court should be guided by and look to in determining a sentence. It is this Court's opinion that this Court can now look to a much broader area of information in determining a sentence. So there will be perhaps other factors that might enter into the Court's determination that might weigh equally as heavy or heavier or less heavy than that which would be advised by the guidelines, particularly, had they been mandatory.[24]

At the sentencing hearing:

THE COURT:     ...Post <u>Booker</u> this Court, as instructed by the Fifth Circuit by way of recent jurisprudence, should determine the guideline range for a defendant in the same manner as pre-. The Fifth Circuit in <u>U. S. v. Mares</u>, 402 F.3d 511, Fifth Circuit, 2005, notes, "The Guideline range should be determined in the same manner as before

---

[24] Transcript of Plea Hearing at pps. 29-30.

Booker/Fanfan. Relatedly, Booker contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing. The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all of the facts relevant to the determination of a non-Guidelines sentence."

\*\*\*

Now, when sentencing, I'm sure Mr. Stanford has explained to you, Mr. Paniagua, about the Sentencing Guidelines and that the Court must look to those Sentencing Guidelines for sentencing. I don't have to follow them, but if I'm not going to follow them, according to what the courts have said, I need to sort of have a reason for not following them. In this instance I  think the Sentencing Guidelines deal with the matter relatively well, so I will be following the Sentencing Guidelines. The Court has concluded that the following sentence is appropriate for this defendant and is fair and reasonable in light of the facts found herein and the applicable law and jurisprudence.[25]

Booker  The record clearly shows that the sentencing judge knew that the Guidelines were not mandatory, nor did she apply them as such.  Moreover, the judge was aware of Paniagua's age and the fact that he would be subject to deportation after serving his sentence.[26]  Considering the record, the judge sentenced Paniagua within the Guidelines range.  This decision is entitled to a presumption of reasonableness.  U.S. v. Campos-Maldonado, supra.

Because the judge considered the applicable sentencing factors and did not apply the Guidelines in a mandatory fashion, counsel had no basis for objecting.  Any objection would have been futile, and therefore, counsel was not ineffective in not lodging the objection.  Accordingly, Paniagua fails to establish an ineffective assistance of counsel claim.

---

[25] Transcript of Sentencing Hearing at pps. 10, 18.

[26] Transcript of Plea Hearing at pps. 4, 23, 24.  Transcript of Sentencing Hearing at p. 16.  PSI at ¶ 37.

*Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Paniagua's Motion to Modify Sentence Pursuant to 28 U.S.C. § 2255 be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996). accepted by the district court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on July 16, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)